IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JOSEPH A. MADER,**

        **Plaintiff,**

  vs.                                                  Civil Action 2:13-CV-665
                                                                       Judge Sargus
                                                                         Magistrate Judge King

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

**I.    Background**

This is an action instituted under the provisions of 42 U.S.C. §§ 405(g), 1383(c), for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and supplemental security income. This matter is now before the Court on plaintiff's *Statement of Specific Errors*, Doc. No. 8, the Commissioner's *Memorandum in Opposition*, Doc. No. 13, and plaintiff's *Reply*, Doc No. 14.

Plaintiff Joseph A. Mader filed his applications for benefits, alleging that he has been disabled since February 10, 2006. The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

Following an administrative hearing, at which plaintiff was represented by counsel, the administrative law judge issued a written decision concluding that plaintiff was not disabled from February 10, 2006, through the date of the administrative decision. *PageID* 40-55. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 22, 2013. *PageID* 29.

Plaintiff was 57 years of age on the date of the administrative decision. *See PageID* 45, 204. He has a high school education, attended two years of college, is able to communicate in English, and has past relevant work as an operations manager and customer service representative/order clerk. *PageID* 53, 67, 85, 250-52. Plaintiff was last insured for disability insurance benefits on December 31, 2011. *PageID* 46. He has not engaged in substantial gainful activity since February 10, 2006, his alleged date of onset of disability. *Id.*

## II. Evidence of Record

Plaintiff sought mental health treatment from Good Samaritan Crisis Care beginning March 4, 2010. *PageID* 307-08. Initially, plaintiff reported feeling depressed for the prior four years with increased symptoms since his release from prison three weeks earlier. *Id.* at 307. He stated that he had sought mental health treatment while in prison but had been denied access to services. *Id.* Plaintiff reported difficulty sleeping, erratic appetite, crying spells, feelings of guilt and hopelessness, anhedonia, and difficulty concentrating. *Id.* Plaintiff was diagnosed with a dysthymic disorder and assigned a Global Assessment of Functioning ("GAF") score of 55.[1] *Id.*

On March 24, 2010, Valerie Houseknecht, M.D., a psychiatrist, began treatment of plaintiff. *PageID* 326-29. Plaintiff reported difficulty

---

[1] The GAF is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. A GAF score "represents a 'snapshot' of a person's 'overall psychological functioning' at or near the time of the evaluation." *McGuire v. Comm'r of Soc. Sec.*, No. 2:12-cv-1084, 2013 U.S. Dist. LEXIS 128959, at *36 (S.D. Ohio Sept. 10, 2013) (quoting *Martin v. Comm'r of Soc. Sec.*, No. 02-5464, 61 Fed. Appx. 191, 194 n.2 (6th Cir. April 9, 2003)). On a scale of zero to 100, a GAF score of 51-60 indicates moderate symptoms or "moderate difficulty in social, occupational, or school functioning[.]" *Curler v. Comm'r of Soc. Sec.*, No. 13-1721, 2014 U.S. App. LEXIS 6202, at *2 n.1 (6th Cir. April 1, 2014) (internal quotation marks and citations omitted).

getting out of bed, poor motivation, a depressed mood, low self-esteem, guilt, nightmares with broken sleep, poor energy, decreased concentration, anxiety, nausea with vomiting at times due to anxiety, variable appetite, and feelings of hopelessness. *PageID* 326. Upon mental status examination, Dr. Houseknecht found mildly avoidant eye contact, mildly slowed psychomotor activity, moderate withdrawal, a moderately constricted affect, a severely depressed mood, mildly decreased attention and concentration, and poor self-esteem with feelings of guilt. *PageID* 327. She diagnosed major depressive disorder, single episode, severe without psychotic features. She assigned a GAF score of 45.[1] *PageID* 328. She prescribed Wellbutrin. *Id.*

On May 19, 2010, plaintiff reported to Dr. Houseknecht that he was "doing okay[,]" but that it had "been a rough month." *PageID* 320. He was taking Trazodone, which made him feel excessively sedated. *Id*. He noticed little difference after taking Wellbutrin (Bupropion), as his apathy persisted. *Id*. Upon mental examination, plaintiff exhibited decreased negativity, decreased feelings of hopelessness, a dysthymic mood/affect, and fair insight/judgment. *Id.*

When seen on June 16, 2010, plaintiff reported crying frequently, staying in bed a lot, and ruminating on the past. *PageID* 317. However, he also reported feeling somewhat better and was unable to identify the trigger for his symptoms. He was taking Trazodone, but complained of a morning hangover. *Id*. Dr. Houseknecht noted a ruminative thought

---

[1] "A GAF of 41-50 indicates 'severe symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).'" *Curler*, 2014 U.S. App. LEXIS 6202, at *2 n.1 (quoting *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 (6th Cir. 2006)).

process, negative thought content, an overall dysthymic mood with improved range of affect and mild psychomotor retardation, with fair insight and judgment. *Id.* His mood remained depressed with feelings of guilt regarding his past transgressions. *Id*. Dr. Houseknecht discontinued Trazodone and prescribed Mirtazipine. *PageID* 318.

Dr. Houseknecht next saw plaintiff on August 11, 2010. *PAGEID* 310-11. He reported that he was "doing okay," but he complained of an erratic sleep schedule. *Id*. at 310. Dr. Houseknecht noted a less dysthymic mood and affect and fair insight and judgment. *Id*. According to Dr. Houseknecht, plaintiff had improved overall but continued to struggle with insomnia and nightmares. *Id*. at 311.

Plaintiff began treatment at Day-Mont West Behavioral Health on July 9, 2010 upon referral from Good Samaritan Crisis Care. *PageID* 336-52. He reported low motivation, difficulty getting out of bed in the morning, poor memory, variable appetite, paranoid thinking, nightmares, decreased focus, mood swings, and decreased sleep. *PageID* 336, 341-42. Plaintiff's condition was characterized as chronic, moderate and impacting all areas of his life. *Id*. Plaintiff was viewed as "motivated for treatment because 'I can't continue like this.'" *Id*. Plaintiff was diagnosed with major depressive disorder, single episode, moderate, and anxiety disorder; he was assigned a GAF score of 51. *PageID* 345. On August 3, 2010, plaintiff reported continued feelings of depression and dwelling on thoughts. *PageID* 361. He also identified his father's recent illness as a stressor. *Id*.

Plaintiff began treatment by Sehba Siddiqi, M.D., a psychiatrist at Day-Mont on September 16, 2010. *PageID* 372-75. Plaintiff reported that

4

he was depressed, had crying spells, nightmares, decreased motivation, increased fatigue and decreased sleep, and isolation. *PageID* 372. Dr. Siddiqi found plaintiff to be withdrawn, with a mildly depressed mood and constricted affect, and mildly decreased judgment and insight. *PageID* 373-74. Plaintiff was diagnosed with major depressive disorder, single episode, moderate, and assigned a GAF score of 52. *PageID* 374. Dr. Siddiqi prescribed Wellbutrin and Remeron. *Id*. On September 30, 2010, plaintiff reported increased stress and depression since the death of his father. *PAGEID* 369. His sleeping and eating habits were variable. *Id*. Upon examination, plaintiff was alert and cooperative, but presented a restricted affect and bad mood. *Id*. Dr. Siddiqi continued plaintiff's medications. *PAGEID* 370. Plaintiff continued to express depression and guilt during a therapy session on November 4, 2010. *PAGEID* 357. The deaths of his father and sister were identified as stressors. *Id*. On November 30, 2010, Dr. Siddiqi noted that plaintiff continued to feel depressed and tired with decreased motivation; however, he was able to perform household chores. *PAGEID* 365. He had looked for a job, but was unable to find work because of his felony record. *Id*. A mental examination revealed a restricted affect and depressed mood. *Id.*

Dr. Siddiqi completed a Mental Status Questionnaire on February 14, 2011. *PageID* 378-80. Mental status findings included hesitant speech, a restricted affect, a depressed mood, some impairment in cognitive functioning, and some insight. *PageID* 378. According to Dr. Siddiqi, plaintiff was impaired in his ability to remember, understand, and follow directions, to maintain attention and sustain concentration, and to persist

5

at tasks and complete them in a timely fashion. *PageID* 379.[2] His ability to engage in social interaction was impaired and his ability to adapt was fair. *Id*. Plaintiff would react "poorly" to pressures in a work setting involving simple and routine, or repetitive, tasks. *Id*.

Dr. Siddiqi also completed a Psychiatric/Psychological Impairment Questionnaire on February 14, 2011. *PageID* 385-92. Dr. Siddiqi diagnosed major depression, single episode, moderate. *PAGEID* 385. Using the Diagnostic and Statistical Manual of Mental Disorders, Fourth Ed. 1994 ("DSM-IV"), Dr. Siddiqi identified "legal problems led to loss of job, no income" on Axis IV. *Id*. The doctor assigned a GAF of 52. *Id*. Plaintiff's prognosis was "guarded due to inability to find a job." *Id*. Clinical findings included sleep disturbance, mood disturbance, anhedonia, psychomotor retardation, feelings of guilt/worthlessness, difficulty thinking or concentrating, social withdrawal or isolation, blunt, flat, or inappropriate affect, decreased energy, and periods of overwhelming anxiety. *PageID* 386. Plaintiff's primary symptoms were depression, sadness, guilt, tiredness, decreased self-worth, poor sleep, decreased motivation, and isolation. *PageID* 387. Dr. Siddiqi characterized plaintiff's symptoms of depression, crying spells, guilt, poor self-worth, self-blame and tiredness as frequent and/or severe. *Id*. According to Dr. Siddiqi, plaintiff's symptoms and functional limitations were reasonably consistent with his physical and/or emotional impairments. *Id*.

Dr. Siddiqi also opined that plaintiff was markedly limited in his abilities to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule and maintain regular attendance; complete a

---

[2] Dr. Siddiqi appears to attribute these impairments to plaintiff's depression.

normal workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and, respond appropriately to changes in the work setting. *PageID* 388-89. Plaintiff was moderately limited in his abilities to remember locations and work-like procedures; sustain ordinary routines without supervision; work in coordination with or proximity to others without being distracted by them; accept instructions and respond appropriately to criticism from supervisors; to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and, to set realistic goals or make plans independently. *PageID* 388-90. Plaintiff was not limited in his ability to understand, remember and carry out simple one or two-step instructions; ask simple questions or request assistance; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. *PAGEID* 388-89. According to Dr. Siddiqi, plaintiff experienced episodes of deterioration or decompensation in work or work-like settings that caused him to withdraw from that situation and/or experience an exacerbation of signs and symptoms due to major depression, poor motivation, and interpersonal issues. *PageID* 390. The doctor expected plaintiff's symptoms to last at least twelve months. His psychiatric condition exacerbated his pain or other physical symptoms. *PAGEID* 391. The doctor believed that plaintiff could withstand low stress and that his impairments would likely produce "good days" and "bad days." *Id*. Dr. Siddiqi also opined that plaintiff would be absent from work more than three times per month due to his impairments or treatment. *PageID* 392.

Stephen Halmi, Psy.D., performed a consultative psychological evaluation on behalf of the state agency on March 1, 2011. *PageID* 394-401.

---

*Id*.

Plaintiff presented with a slumped posture, diverted eye contact, strained facial expressions, a lethargic appearance, a flat affect and sadness. He reported decreased interests, fluctuating appetite, decreased sleep, restlessness, chronic fatigue, daily feelings of guilt and worthlessness, decreased concentration, suicidal thoughts (but no plan or intent to kill himself) and nightmares. *PAGEID* 396-97. Dr. Halmi noted no obvious signs of anxiety, but reported symptoms commonly associated with anxiety, *i.e.*, excessive worry, difficulty controlling worry, sudden anxious spells, an easy startle response, and paranoia. *PageID* 397. Dr. Halmi diagnosed a major depressive disorder, single episode, moderate, and anxiety disorder. *Id*. Using the DSM-IV, Dr. Halmi identified "[f]inancial problems; unemployment" on Axis IV. *PAGEID* 399. Plaintiff was assigned a GAF score of 50. *Id*. According to Dr. Halmi, plaintiff's ability to understand and follow directions was not impaired. *PAGEID* 400. He was moderately limited in his ability to perform simple, repetitive tasks and to withstand stress and day-to-day work activities. *PageID* 400-01. Plaintiff was mildly limited in his ability to relate to others. *PageID* 401. According to Dr. Halmi, plaintiff may have difficulty making reasonable decisions, living independently and managing his own money. *PAGEID* 398.

On March 9, 2011, plaintiff's mental health therapist at Day-Mont completed a Daily Activities Questionnaire. *PageID* 404-05. Plaintiff reported that he lived with his wife and interacted with her daily, but that he interacted with friends only about once a month. *PAGEID* 404. His relationship with his sister had degraded. *Id*. Plaintiff could prepare food, perform household chores, take care of his own hygiene, and take public transportation. *PageID* 405. He could not go shopping due to

problems with crowds nor could he take care of his own finances. *Id*. Plaintiff had no hobbies. *Id.* Plaintiff was compliant with his medications. *Id*. Plaintiff's therapist identified transportation as an impediment to work. *Id*.

When seen in May 2011, plaintiff reported that he intended to discontinue therapy because of cost. *PageID* 408.

State agency psychologist Mel Zwissler, Ph.D., reviewed the file in March 2011 and found that the record documents an affective disorder and anxiety disorder. *PageID* 95. According to Dr. Zwissler, plaintiff was moderately restricted in his activities of daily living; had mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence and pace. *Id.* Dr. Zwissler found plaintiff to be partially credible, but that he overstates his symptoms and limitations to a greater degree than the medical evidence of record would support. *PageID* 96. Dr. Zwissler gave great weight to Dr. Halmi's opinion. *Id*. According to Dr. Zwissler, plaintiff is capable of simple, repetitive tasks in a static environment with limited production standards. *PageID* 97-98.

On August 5, 2011, state agency psychologist Paul Tangeman, Ph.D., agreed with Dr. Zwissler's opinion. He concluded that Dr. Siddiqi's opinion was not supported by the medical evidence. *PageID* 119.

Richard Gross, Ph.D., a state agency psychologist, also reviewed the evidence on August 18, 2011, *PageID* 422-23, and concluded that plaintiff is able to understand, remember, and carry out simple instructions. *PAGEID* 423. Plaintiff has no social limitations and is capable of performing simple, routine and repetitive tasks. *Id.*

## III. Administrative Hearing and Decision

The administrative hearing was held on August 7, 2012. *PageID* 61-90. At the hearing, plaintiff testified that he was living with a friend because he and his wife had recently separated. *PageID* 66-67, 76. He has been unsuccessful in obtaining new employment. *PAGEID* 67-68.

Plaintiff testified that his mental condition is "almost paralyzing." *PageID* 70. On some days, he has difficulty getting out of bed. *Id*. He also experiences panic attacks that occasionally awaken him at night. *Id*. He has nightmares once or twice per week. *Id.*

He described his anxiety attacks as "coming out of my skin." *Id*. The attacks, which occur one to three times per week, last from 30 to 60 minutes at a time. *PageID* 71. The attacks are triggered by stress. *PAGEID* 81. He is exhausted after an attack and must lie down. *PAGEID* 80. He lacks energy and sometimes just "blank[s] out." *PageID* 72. He was not receiving mental health treatment at the time of the hearing because he had no source of income to pay for treatment. *Id.* His efforts to obtain treatment at reduced rates had been unsuccessful. *PageID* 73. The medication previously prescribed for him did not help. *Id.*

Plaintiff testified that he sleeps five or six hours a night. *PAGEID* 75. During the day, he naps a couple of times a day, for 30 to 40 minutes at a time. *PageID* 76. He makes sandwiches but does not cook. *Id.* He does some light household chores. He went shopping only with his wife; he has not gone shopping since separating from her. *Id.* He has difficulty with concentration: he cannot stay focused on television shows and has lost interest in reading. *Id.* He uses a computer once or twice a week for approximately one hour. *PageID* 77-78.

Plaintiff has had difficulty concentrating and focusing for the prior four to six years. *PAGEID* 78. He has racing thoughts and experiences depression on a daily basis, almost hourly. *PAGEID* 81. He has frequent crying spells. *Id*. He has no desire to socialize with others. *PageID* 82. He lies down for most of the day several times per month. *PAGEID* 82-83.

The vocational expert testified that a claimant with plaintiff's vocational profile and the residual functional capacity ("RFC") eventually found by the administrative law judge could perform a significant number of jobs at a variety of exertional levels. *PAGEID* 86-88. Asked by plaintiff's counsel to assume a claimant who "would miss work three or more days a month due to psychologically based symptoms," *PAGEID* 88, the vocational expert testified that such a claimant "wouldn't be able to maintain a full time job. . . ." *PAGEID* 89.

In her written decision, the administrative law judge found that plaintiff's severe impairments consist of major depressive disorder and generalized anxiety disorder. *PageID* 46. The administrative law judge went on to find that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the RFC to perform a full range of work at all defined exertional levels subject to the following non-exertional limitations: simple, routine and repetitive tasks that would not involve sustained concentration longer than two hours at a time; low-stress duties that would involve only occasional changes in work setting; no production rate or pace work. *PageID* 50-51.

Although this RFC precluded plaintiff's past relevant work, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is able to perform a significant number of jobs in the national economy, including 42,000 jobs as the medium level of exertion

11

(*e.g.*, warehouse worker, kitchen helper, and laundry worker); 16,000 jobs at the light level of exertion (*e.g.*, mail clerk, injection molding machine tender, and assembly machine tender); and 3,200 jobs at the sedentary level of exertion (*e.g.*, sorting machine operator, wire insulator, and polishing machine operator). *PageID* 53-54. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from February 10, 2006, through the date of the administrative law judge's decision. *PageID* 54.

**IV. Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990)(citing

*Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth*, 402 F.3d at 595.

In his *Statement of Specific Errors*, plaintiff contends that the administrative law judge failed to follow the treating physician rule by failing to give controlling or deferential weight to the opinions of plaintiff's treating psychiatrist, Dr. Siddiqi. Doc. No. 8 at *PageID* 452-56. The opinion of a treating provider must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Even if the opinion of a treating provider is not entitled to controlling weight, an administrative law judge is nevertheless required to determine how much weight should be given to the opinion by considering such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416. 927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Moreover, an administrative law judge must provide "good reasons" for discounting the opinion of a treating provider, *i.e.*, reasons that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting SSR 96-2p, 1996 SSR LEXIS 9, 1996 WL 374188, at *5 (July

2, 1996)). This special treatment afforded to the opinions of treating providers recognizes that

> "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).

Dr. Siddiqi saw plaintiff on four occasions between September 2010 and February 2011. *PageID* 365-66, 369-70, 372-75, 378-80. The administrative law judge recognized Dr. Siddiqi as a treating physician, but rejected Dr. Siddiqi's February 14, 2011 opinion that plaintiff would be absent from work more than three times a month as "purely speculative and . . . less than credible." *PageID* 47.

> Dr. Siddiqi treated the claimant on two occasions in 2010 and once in 2011. Single episode of major depression was diagnosed (Exhibit 4F). Dr. Siddiqi assigned the claimant a GAF score of "52" (indicative of "moderate" symptoms). According to Dr. Siddiqi, the claimant's depression was caused by his inability to find a job due to past legal issues. Dr. Siddiqi indicated that the claimant's capacity for sustained concentration is markedly limited but that the claimant remains able to remember and carry out simple one- or two-step instructions (Exhibit 4F at 6). It was reported that the claimant would be capable of loss-stress duties (Exhibit 4F at 9).
>
>        \*                    \*                  \*
>
> . . . [T]he specific conclusion of treating psychiatrist Dr. Siddiqi that the claimant would likely be absent from work more than three times per month cannot be given controlling, or even deferential, weight. Such conclusion is neither well supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with other substantial evidence in the case record. Other references in the report of Dr. Siddiqi are indicative of an ability to work in a low-stress environment while engaged in simple routine and repetitive tasks. In fact, Dr. Siddiqi attributed the claimant's depression to an ability to find a job (which infers an underlying capacity to work).

14

*PAGEID* 47-48. The administrative law judge made no separate mention of Dr. Siddiqui's opinions that plaintiff was markedly impaired in his ability to perform activities within a schedule and to maintain regular attendance, *see PageID* 388, and in his ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and to respond appropriately to changes in the work setting. *See PageID* 389.

The administrative law judge's failure to give controlling or deferential weight to all of Dr. Siddiqi's opinions lacks substantial support in the record. Although the administrative law judge noted Dr. Siddiqi's GAF score of 52, the plaintiff's ability to remember and carry out simple one- or two-step instructions and the plaintiff's ability to work in a low-stress environment while engaged in simple routine tasks as indicative of a capacity to work, *PageID* 47-48, the administrative law judge made no mention of Dr. Siddiqi's opinion that plaintiff's capacity for sustained concentration is markedly limited, as is his ability to, *inter alia*, maintain attention and concentration for extended periods; perform activities within a schedule and maintain regular attendance; and complete a normal workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. *PageID* 388-89. The administrative law judge's "focus on isolated pieces of the record is an insufficient basis for giving [Dr. Siddiqi's] opinions little weight under 20 C.F.R. § 404.1527(c)." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013).

In addition, the administrative law judge apparently attributed significance to Dr. Siddiqi's observation that plaintiff's depression was caused by his inability to find a job. *PAGEID* 47-48. However, merely identifying the cause of a claimant's mental impairments reveals nothing about the associated symptoms and limitations presented by those impairments. Indeed, the administrative law judge's inference of "an underlying capacity to work," *PAGEID* 48, could be read as an improper medical opinion by one not qualified to render such an opinion. In short, under all of these circumstances, it cannot be said that the finding of the administrative law judge in this regard is supported by substantial evidence. The action must therefore be remanded for further consideration of the opinions and findings of plaintiff's treating psychiatrist, Dr. Siddiqi.

Having so concluded, the Court need not, and does not, address plaintiff's challenge to the administrative law judge's credibility determination. *PAGEID* 456-57.

It is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** for further consideration of the opinions and findings of plaintiff's treating psychiatrist, Dr. Siddiqi.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

May 30, 2014                                         *s/Norah McCann King*
                                                    Norah M<sup>c</sup>Cann King
                                                 United States Magistrate Judge